# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RENO FUENTES RIOS, | ) | Case No.: 1:08-cv-01048-AWI-JLT HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS TO |
| | ) | GRANT RESPONDENT'S MOTION TO |
| v. | ) | DISMISS (Doc. 52) |
| | ) | |
| | ) | ORDER DIRECTING THAT OBJECTIONS BE |
| CALIFORNIA DEPARTMENT OF | ) | FILED WITHIN TWENTY DAYS |
| CORRECTIONS & REHABILITATION, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner is a state prisoner proceeding pro se on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

On January 24, 2008, Petitioner filed the instant petition. (Doc. 1). Respondent was originally ordered to file a response to the petition on October 15, 2008. (Doc. 15). Respondent filed a motion to dismiss the petition on February 13, 2009. (Doc. 27). On September 11, 2009, the Court issued Findings and Recommendations to grant the motion to dismiss as to Petitioner's challenge to a 2004 prison disciplinary hearing and to deny the motion to dismiss as to Petitioner's challenge to a 2006 gang validation. (Doc. 30). On March 25, 2010, the District Judge adopted the Findings and Recommendations and dismissed Petitioner's claim regarding the 2004 disciplinary hearing. (Doc. 36). The matter was referred to the Magistrate Judge for

1

further proceedings on the remaining claim.

Petitioner then appealed the dismissal of his claim regarding the 2004 disciplinary hearing to the Ninth Circuit, which, on May 19, 2010, dismissed the appeal for lack of jurisdiction. (Doc. 40). Mandate was issued by the Ninth Circuit on July 20, 2010. (Doc. 42). On July 20, 2010, the Court ordered Respondent to file a response to the remaining claim. (Doc. 43). On October 19, 2010, Respondent moved to file a second motion to dismiss as to the remaining claim. (Doc. 47). Along with the motion, Respondent filed a proposed motion to dismiss. (Id., Attach. A). On November 17, 2010, the Court granted Respondent's motion to file a second motion to dismiss and directed the Clerk of the Court to file the proffered motion. (Doc. 51). The Clerk of the Court then filed the motion to dismiss as Document 52. On January 11, 2011, Petitioner filed his opposition to the motion to dismiss. (Doc. 53).

**DISCUSSION**

A.  Procedural Grounds for Motion to Dismiss

Respondent has filed the instant motion to dismiss the petition for lack of habeas jurisdiction. Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed Respondent's to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a Respondent can file a motion to dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's motion to dismiss is based on a lack of habeas jurisdiction.

Because Respondent's motion to dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal answer, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

      B. <u>Lack of Habeas Jurisdiction</u>.

Petitioner was convicted in the Sacramento County Superior Court in 1989 of kidnaping and sentenced to an indeterminate term of life with the possibility of parole. (Doc. 9, Ex. A). Petitioner's Minimum Eligible Parole Date ("MEPD") was February 1996. (Doc. 9, p. 2). On June 7, 2006, Petitioner alleges that he was placed in the SHU without having been found guilty of any prison disciplinary violation, but rather on the basis of five written notes found in the possession of other inmates that indicated that Petitioner was a member of a Mexican prison gang. (Doc. 9, p. 9). On July 26, 2006, Petitioner was "validated" by Respondent as a member of a prison gang, and the period of Petitioner's SHU confinement was extended through June 2012. (<u>Id</u>.). Petitioner attended his fifth parole hearing on January 18, 2007, but was found not suitable for parole. (Doc. 52, Ex. 1).

Petitioner raises three grounds for relief in the first amended petition. First, Petitioner contends that Respondent violated his First, Fourth, Fifth, Eighth, and Fourteenth Amendment constitutional rights by "extending" his SHU incarceration by six years based on an erroneous gang validation, which will result in "meaningless" parole hearings during that time because the BPH never grants parole to an inmate who has been gang validated. Second, Petitioner contends that Respondent's system of gang validation is unconstitutional and arbitrary and capricious. Third, Petitioner contends that federal due process was violated because "some evidence" did not support his gang validation and subsequent parole denial. (Doc. 9).

Respondent's motion to dismiss argues that this Court lacks habeas jurisdiction because the actions complained of, i.e., gang validation and SHU confinement, are not habeas issues per se, nor do they impact the fact or duration of Petitioner's sentence as a "lifer." (Doc. 52). Respondent reasons that SHU inmates still have opportunities to engage in programs that will improve their prospects for parole, and that any negative impact of SHU restrictions is too

attenuated to have a direct and certain impact on a prisoner's chances for release on parole. (Id.). For the reasons set forth below, the Court agrees with Respondent and recommends that the petition be dismissed.

### 1. The Gang Validation And SHU Confinement Did Not Directly Extend Petitioner's Sentence.

A federal court may only grant a petition for writ of habeas corpus if the petitioner can show that "he is in custody in violation of the Constitution . . . ." 28 U.S.C. § 2254(a). A habeas corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his confinement. Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991), *quoting*, Preiser v. Rodriguez, 411 U.S. 475, 485 (1973); Hill v. McDonough, 547 U.S. 573, 579, 128 S.Ct. 2096 (2006)(challenges to the lawfulness of confinement or to particulars affecting its duration are the province of habeas corpus); Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases.  In contrast, a civil rights action pursuant to 42 U.S.C. § 1983 is the proper method for a prisoner to challenge the conditions of that confinement. McCarthy v. Bronson, 500 U.S. 136, 141-42 (1991); Preiser, 411 U.S. at 499; Badea, 931 F.2d at 574; Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases.  While the United States Supreme Court has not addressed whether a challenge to a condition of confinement may be brought in habeas corpus, see Docken v. Chase, 393 F.3d 1024, 1028 (9th Cir. 2004), the Ninth Circuit has held that "habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will *not necessarily* shorten the prisoner's sentence." Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003)(emphasis supplied).

In In re Dannenberg, 34 Cal.4th 1061 (2005), the California Supreme Court described the evolution of California's differing treatment of inmates sentenced pursuant to the determinate sentencing law ("DSL") and those sentenced under the indeterminate sentencing law ("ISL") as follows:

> For decades before 1977, California employed an "indeterminate" sentencing system for felonies.  The court imposed a statutory sentence expressed as a range between a minimum and maximum period of confinement–often life imprisonment–the offender must serve.  An inmate's actual period of incarceration within this range was under the exclusive control of the parole authority...During most of this period, parole dates were

> not set, and prisoners had no idea when their confinement would end, until the moment the parol authority decided they were ready for release.
>
> The DSL, adopted in 1976, largely abandoned this system....
>
> Under the DSL, most felonies are now subject, in the alternative, to three precise terms of years...The court selects one of these alternatives (the lower, middle, or upper term) when imposing sentence...The offender must serve this entire term, less applicable sentence credits, within prison walls, but must then be released for a further period of supervised parole....
>
> However, certain serious offenders, including "noncapital" murderers (i.e., those murderers not punishable by death or life without parole), remain subject to indeterminate sentences. These indeterminate sentencees may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement....

In re Dannenberg, 34 Cal.4th at 1077-1080 (citations omitted).

Effective January 1, 1983, the California legislature added new § 2933 to the state Penal Code, which eliminated the prior credit-earning system and instituted a new system of "work-time" credits for performance in work assignments and educational programs up to a maximum of one day reduction in term for each day of performance. 70 Ops. Cal. Atty. Gen. 49 (1987). However, § 2933 applies *only* to persons sentenced under Penal Code §1170. Persons convicted under § 1170 are those convicted of an offense for which the specified sentence is one of three time periods of imprisonment in state prison. Cal. Pen. Code § 1168. Accordingly, since Petitioner was not sentenced under § 1170, he is not entitled to the normal work-time credits under § 2933 that are awarded to inmates serving determinate sentences.

Instead, Petitioner's credit-earning is governed by state regulations. Section 2290(a) of Title 15 provides as follows:

> "Life prisoners may earn post-conviction credit for each year spent in state prison. Post-conviction credit for time served prior to the hearing at which a parole date is established shall be considered at that parole consideration hearing. Thereafter, post-conviction credit for time served since the last hearing shall be considered at progressive hearings. In no case may post-conviction credit advance a release date earlier than the minimum eligible parole date." [1]

The suggested amount of post-conviction credit is "4 months for each year served since the date

---

[1] Title 15 of the Code of California Regulations § 2000(b)(3) defines a "life prisoner" as "a prisoner serving a sentence of life with the possibility of parole." Life sentences may be imposed for, inter alia, several types of kidnaping. Cal. Code Regs., tit. 15, § 2000(b)(3)(C). Here, Petitioner was sentenced to a life term for kidnaping. Accordingly, he falls within the provisions of this regulation vis-a-vis his credit-earning ability.

5

1  the life term started." Cal.Code.Regs., tit. 15, 2290(c).  The Board of Parole Hearings ("BPH")
2  may grant more or less than four months depending on how much time the inmate's
3  "performance, participation or behavior" warrants.  Id.
4       In order, however, to fully appreciate the limitations of Petitioner's credit-earning
5  capacity as a life prisoner, an explanation of how California's parole system for life prisoners
6  interacts with a life prisoner's credit-earning potential is necessary.  A life prisoner's MEPD is
7  the "earliest date on which an Indeterminate Sentence Law or life prisoner may be legally
8  released on parole."  See Cal. Code Regs., titl. 15, § 3000; see also Cal. Code Regs., tit. 15, §
9  2000(b)(67).  The CDCR determines the MEPD.  See Cal. Code Regs., tit. 15, § 2400.  However,
10 "[t]he length of time a prisoner must serve prior to actual release on parole is determined by the
11 [BPH]."  Id.
12      California law provides that, one year prior to a prisoner's MEPD, a BPH panel shall
13 meet with the prisoner and shall set a release date "unless it determines that the gravity of the
14 current convicted offense or offenses, or the timing and gravity of current or past convicted
15 offense or offenses, is such that consideration of the public safety requires a more lengthy period
16 of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this
17 meeting."  Cal. Penal Code § 3041(a).  Thus, the prisoner's MEPD is the basis for the timing of
18 the initial suitability hearing.
19      Following a parole denial, the BPH "shall hear each case annually thereafter," except that
20 the BPH may schedule a subsequent hearing up to five years "after any hearing at which parole is
21 denied" if the prisoner has been convicted of murder and the BPH finds "that it is not reasonable
22 to expect that parole would be granted at a hearing during the following years and states the bases
23 for the finding in writing."  Cal. Penal Code § 3041.5(b)(2).
24      Following a finding of parole suitability for an inmate convicted of a murder committed
25 on or after November 8, 1978, the BPH sets a base term "established solely on the gravity of the
26 base crime, taking into account all of the circumstances of that crime."  Cal. Code Regs., tit. 15,
27 § 2403(a).  The BPH sets a base term by taking into account the "matrix" of suggested base
28 terms, circumstances in aggravation and mitigation, and adjustments for enhancements or other

offenses. See Cal. Code Regs., tit. 15, § 2403-2411. However, the BPH may impose a base term other than one provided in the matrix "if justified by the particular facts of the individual case...." Id. Once a base term is set, the BPH may consider awarding post-conviction credit to reduce the base term, up to four months for each year served, depending on the prisoner's performance, participation, and behavior while in prison. See Cal. Code Regs., tit. 15, § 2400-2410.

California Penal Code § 190(a) mandates the application of good behavior credits by the CDCR against the minimum term for first degree murder, i.e., twenty-five years, that is imposed by statute for purposes of establishing the MEPD. In re Dayan, 231 Cal.App.3d 184, 188 (1991). However, nothing in the statute requires the BPH, or CDCR, to reapply those same credits to the actual term it eventually sets for Petitioner's sentence if, and when, it determines that Petitioner is eligible for parole. Id.; see also Cal. Code Regs., tit. 15, § 2400 ("The [Department of Correction and Rehabilitation's] decisions pursuant to Penal Code §§ 2930 et seq. do not affect the [BPH's] decision concerning post-conviction credit pursuant to these rules."). Thus, in theory, if a prisoner were determined to be parole eligible at the earliest possible time, credits might be of some use in actually reducing the amount of time a prisoner served before his initial parole suitability hearing was set. See People v. Rowland, 134 Cal.App.3d 1, 13-14 (1982). However, the question of Petitioner's actual release on parole will be determined only by the BPH, and no matter how much time Petitioner has served, he will not be released until he has been found suitable for parole. Cal. Pen. Code § 3041(b); Cal.Code Regs., tit. 15, § 2281(a).

Put simply, the credits that Petitioner is statutorily entitled to earn as a life prisoner can have no direct impact upon the amount of time Petitioner must actually serve, *until* the BPH determines that he is suitable for parole and orders his release, if that time ever comes. Such credits can only impact the establishment of the MEPD for purposes of scheduling a parole suitability hearing date. Here, as Respondent correctly observes, Petitioner passed his MEPD date fifteen years ago. Indeed, Petitioner has already had *four* parole suitability hearings prior to the one now contested. (Doc. 52, Ex. 1, p. 25).

There is no evidence that the gang validation and SHU confinement of which Petitioner complains has negatively impacted his credit earning capacity per se; however, even if they had,

7

since Petitioner has already passed his MEPD, credits or lack thereof have no impact on his sentence. To the contrary, only the BPH has the authority at this point to alter the actual amount of time Petitioner is incarcerated prior to parole. Thus, the gang validation and SHU confinement provide no basis for habeas jurisdiction from the standpoint of <u>directly</u> extending Petitioner's period of incarceration.

As the Ninth Circuit has indicated, "habeas jurisdiction is absent, and a §1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence." <u>Ramirez</u>, 334 F.3d at 858. Here, it is patent that the credits earned by a life prisoner such as Petitioner will not "<u>necessarily</u> shorten" his sentence. Thus, the Court cannot base its habeas jurisdiction upon a credit-earning system that has no impact on the duration of Petitioner's sentence.

### 2. <u>No Indirect Impact On Petitioner's Period Of Incarceration Has Been Shown.</u>.

Respondent next contends that any indirect consequences of gang validation and SHU confinement on the BPH's parole considerations are too attenuated to support this Court's habeas jurisdiction. Again, the Court agrees.

Petitioner does not cite, and the Court is unaware of, any legal authority holding that Petitioner has a federal constitutional right to an accurate gang "validation." Thus, any liberty interest in a gang validation or SHU placement must arise under California law. A liberty interest arises under state law when an inmate is subjected to restrictions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin v. Connor</u>, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995).

The possibility, however, of a denial of parole at some later time, where one of the considerations for parole is inaccurate information about an inmate's gang membership, does not amount to the denial of a liberty interest. In <u>Sandin</u>, the U.S. Supreme Court concluded that a possible loss of credits due to a disciplinary conviction was insufficient to give rise to a liberty interest where "[n]othing in [the State's] code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, even though misconduct is by regulation a relevant consideration." <u>Sandin</u>, 515 U.S. at 487. The Court went on to note that "[t]he

decision to release a prisoner rests on a myriad of considerations," and an inmate is generally "afforded procedural protection at this parole hearing in order to explain the circumstances behind his misconduct record." Id. at 487. The Court held that "[t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." Id.

After Sandin, in order to demonstrate a liberty interest, an inmate must show that a disciplinary conviction will inevitably lengthen the duration of the inmate's incarceration. Id. The Court finds no logical or practical basis upon which to distinguish the instant allegation, i.e., that an erroneous gang "validation" impacted Petitioner's chances for parole, from the allegation in Sandin that an erroneous disciplinary finding affected the inmate's chances for parole. Accordingly, the same result should obtain, i.e., that Petitioner does not have a liberty interest in an accurate gang validation. Since Petitioner has failed to establish that such an erroneous validation will "inevitably lengthen the duration" of his incarceration, there is no due process interest at issue and thus no basis for this Court to assert its habeas jurisdiction.

As Respondent correctly observes, in addition to the gang validation, the BPH relied on a variety of factors as bases for finding Petitioner unsuitable for parole. The Board began by observing that Petitioner had received numerous disciplinary citations over the years and that his disciplinary history was "poor." (Doc. 52, Ex. 1, pp. 33-34). Of the eighteen serious disciplinary violations for which Petitioner had been cited and seven less serious citations, he had suffered one since his last parole hearing, i.e., for possession of escape paraphernalia. (Id., p. 34). Although Petitioner denied being a member of a prison gang and denied having engaged in violence in the past, he replied "no comment" to queries from Board members regarding his use of illegal drugs while in prison. (Id., p. 39). The BPH also noted that the commitment crime demonstrated "exceptionally callous disregard for human suffering" and that the motive for the crime was "trivial in relation to the offense." (Id., p. 52).

Petitioner's attorney essentially conceded that Petitioner needed additional time to document "things that he's done for his education, particularly learning the English language and further educational courses...." (Id., p. 46). The Board noted that there was no indication that

Petitioner had been involved in any work assignments, that he was not currently assigned to a prison job, and that he had not been involved in any vocational training or self-help programs. (Id., p. 35). While noting that Petitioner's opportunities to engage in programs while in the SHU were limited, Petitioner's counsel conceded that Petitioner's high classification score was "part of the problem" with being permitted to enter those programs. (Id., p. 47).[2] The BPH summarized Petitioner's lack of participation in programs or endeavors that would reflect favorably on him at the hearing by noting that "[t]he Panel searched for something to commend this inmate for and could find nothing." (Id., p. 54).

Finally, the Board referred to the psychologists report that emphasized Petitioner's drug use history, his prison disciplinary record, his anti-social behavior, and his refusal to take responsibility for his actions, including both the original offense and his prison misconduct. (Doc. 52, Ex. 1, pp. 40-41). The psychologist concluded that Petitioner posed "a threat to others in the CDC environment" as well as "an above average risk to the community compared to the inmate population." (Id., p. 41).

From the foregoing it is obvious that, contrary to Petitioner's contentions, the BPH relied on a wide variety of factors that extend far beyond the mere fact of Petitioner's gang validation. Under such circumstances, the Court cannot conclude that Petitioner's gang validation "inevitably lengthen[ed] the duration" of Petitioner's confinement; to the contrary, such a correlation is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." See Sandin, 515 U.S. at 487.[3]

    4. To The Extent That Petitioner Claims That The BPH's Decision Is Not Supported By "Some Evidence" The Court Lacks Jurisdiction.

Because California's statutory parole scheme guarantees that prisoners will not be denied

---

[2] Respondent accurately relates that Petitioner's classification score at the time of the BPH hearing was 144. (Doc. 52, Ex. 1, p. 33).

[3] For the same reasons as discussed in this section, the Court rejects Petitioner's second ground for relief, i.e., the arbitrary and capricious nature of Respondent's gang validation process, because, even if true, that fact would not "inevitably lengthen" Petitioner's sentence, and, therefore, it is too attenuated to support this Court's habeas jurisdiction.

1  parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals has
2  held that California law creates a liberty interest in parole that may be enforced under the Due
3  Process Clause. Hayward v. Marshall, 602 F.3d 546, 561-563 (9th Cir.2010); Pearson v. Muntz,
4  606 F.3d 606, 608-609 (9th Cir. 2010); Cooke v. Solis, 606 F.3d 1206, 1213 (2010), *rev'd*,
5  Swarthout v. Cooke, ___ U.S.___, ___ S.Ct. ___, 2011 WL 197627 (Jan. 24, 2011). The Ninth
6  Circuit instructed reviewing federal district courts to determine whether California's application
7  of California's "some evidence" rule was unreasonable or was based on an unreasonable
8  determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563;
9  Pearson v. Muntz, 606 F.3d at 608.

10  On January 24, 2011, the Supreme Court issued a *per curiam* opinion in Swarthout v.
11  Cooke, 562 U.S.___, ___ S.Ct. ___, 2011 WL 197627 (No. 10-133, Jan. 24, 2011). In that
12  decision, the United States Supreme Court characterized as reasonable the decision of the Court
13  of Appeals for the Ninth Circuit that California law creates a liberty interest in parole protected
14  by the Fourteenth Amendment's Due Process Clause, which in turn requires fair procedures with
15  respect to the liberty interest. Swarthout, 2011 WL 197627, *2.

16  However, the procedures required for a parole determination are the minimal
17  requirements set forth in Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442
18  U.S. 1, 12, 99 S.Ct. 2100 (1979).[4] Swarthout v. Cooke, 2011 WL 197627, *2. In Swarthout, the
19  Court rejected inmates' claims that they were denied a liberty interest because there was an
20  absence of "some evidence" to support the decision to deny parole. In doing so, the High Court
21  stated as follows:

> There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners. (Citation omitted.) When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication–and federal courts will review the application of those constitutionally required procedures. In the context of parole, we have held that the procedures requires are minimal. In Greenholtz, we found that a prisoner subject to a parole statute similar to California's received adequate process when

---

[4] In Greenholtz, the Court held that a formal hearing is not required with respect to a decision concerning granting or denying discretionary parole and that due process is sufficient to permit the inmate to have an opportunity to be heard and to be given a statement of reasons for the decision made. Id. at 15-16. The decision maker is not required to state the evidence relied upon in coming to the decision. Id.

11

> he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied. (Citation omitted.)

Swarthout, 2011 WL 197627, *2.

The Court concluded that the petitioners had received the due process to which they were due:

> They were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied...
>
> That should have been the beginning and the end of the federal habeas courts' inquiry into whether [the petitioners] received due process.

Swarthout, 2011 WL 197627, *3. The Court went on to expressly point out that California's "some evidence" rule is not a substantive federal requirement, and correct application of the State's "some evidence" standard is not required by the federal Due Process Clause. Id. at *3. The Supreme Court emphasized that "the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business." Id.

Here, the record is undisputed that Petitioner was present at the January 18, 2007 BPH hearing, that he had an opportunity to participate, that he was represented by counsel, and that the BPH gave reasons for denying parole suitability. (Doc. 9). Accordingly, to the extent that Petitioner's third ground for relief claims that the Board's decision violated federal constitutional principles because its conclusion that Petitioner had been properly gang "validated" was not based on "some evidence," such a claim is entirely foreclosed by Swarthout because this court cannot entertain substantive due process claims related to a state's application of its own laws. Review of the record for "some evidence" to support the denial of parole is not within the scope of this Court's habeas review under 28 U.S.C. § 2254. Accordingly, that claim should be summarily dismissed.

Moreover, to the extent that ground three claim rests solely on state law, it is not cognizable on federal habeas corpus. Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation. Wilson v. Corcoran, 562 U.S.

___, 131 S.Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475 (1991). Alleged errors in the application of state law are not cognizable in feeral habeas corpus. Souch v. Schiavo, 289 F.3d 616, 623 (9th Cir. 2002). Indeed, federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989).

**RECOMMENDATION**

Accordingly, the Court HEREBY RECOMMENDS that the motion to dismiss (Doc. 52), be GRANTED and the habeas corpus petition be DISMISSED for Petitioner's failure to raise a cognizable habeas claim.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty (20) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **February 16, 2011**              **/s/ Jennifer L. Thurston**
                                           UNITED STATES MAGISTRATE JUDGE